IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

_____

)
UNITED STATES OF AMERICA,      )
)
     Plaintiff,       )
)
     v.         )     Civil Action No. 21-1115
)
CENTER ETHANOL COMPANY, LLC,  )
)
     Defendant.      )
)
_____)

## COMPLAINT

Plaintiff, the United States of America, by and through the Attorney General of the United States and through his undersigned attorneys, and acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1.    The United States brings this civil action against Center Ethanol Company, LLC ("Center Ethanol") pursuant to Sections 111(e) and 113(b) of the Clean Air Act (the "CAA"), 42 U.S.C. §§ 7411(e) and 7413(b), for alleged environmental violations at Center Ethanol's ethanol production facility located in Sauget, Illinois ("Facility"). The United States is seeking injunctive relief and the assessment of civil penalties for the alleged violations.

2.    The United States alleges that Center Ethanol violated and/or continues to violate the following federal and state statutory and regulatory requirements that are applicable to the Facility:

      a.     The New Source Performance Standards ("NSPS") for Volatile Organic Compounds ("VOC") emissions from Synthetic Organic Chemicals Manufacturing Industry (40 C.F.R. Part 60, Subpart VV) and the NSPS for Volatile Organic Liquid Storage Vessels (40 C.F.R. Part 60, Subpart Kb), including Leak Detection and Repair ("LDAR") requirements codified in certain provisions of 40 C.F.R. Part 60, Subpart VV, and 40 C.F.R. Part 60, Appendix A-7, Method 21;

      b.     The requirements of the Illinois Annual Emissions Reporting Program included in the Illinois State Implementation Program (the "Illinois SIP") approved by EPA pursuant to CAA Section 110, 42 U.S.C. § 7410, and codified at 35 Ill. Admin. Code 205; and

      c.     Certain conditions of Center Ethanol's Construction Permit No. 163121ABE regarding Volatile Organic Material ("VOM") fugitive emissions established according to 35 Ill. Admin. Code § 201.156 of the Illinois SIP.

3.     While the CAA and federal regulations use the term Volatile Organic Compounds ("VOC") and the Illinois SIP and state regulations use the term VOM, the two terms are synonymous for the purposes of this Complaint.

4.     As a result of Center Ethanol's operation of the Facility in the absence of appropriate controls and while repeatedly exceeding VOC limitations imposed by NSPS requirements and Illinois SIP requirements, significant amounts of VOC pollution each year have been released into the atmosphere.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to CAA § 113(b), 42 U.S.C. § 7413(b); and 28 U.S.C. §§ 1331, 1345, and 1355.

6.      Venue is proper in this district pursuant to CAA § 113(b), 42 U.S.C. § 7413(b); and 28 U.S.C. §§ 1391(b) and (c), and §1395(a), because Defendant conducts business within this District and because the violations that constitute the basis of the Complaint occurred or are occurring at a Facility located in this District.

## NOTICES

7.      The United States has provided notice of the commencement of this action to the State of Illinois as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

8.      On December 21, 2017, EPA issued Center Ethanol a CAA Notice and Finding of Violation (the "EPA Violation Notice"). EPA provided a copy of this Notice to the State of Illinois, as required by Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1). The thirty-day period between issuance of the NOV and commencement of a civil action, as required under CAA § 113, 42 U.S.C. § 7413, has elapsed.

9.      More than thirty days have elapsed since EPA provided notice to Center Ethanol pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), of all violations of federally enforceable aspects of the Illinois SIP alleged herein.

## AUTHORITY

10.     The United States Department of Justice has authority to bring this action on behalf of the Administrator of the EPA under Section 305(a) of the CAA, 42 U.S.C. § 7605(a) and pursuant to 28 U.S.C. §§ 516 and 519.

## DEFENDANT

11.     Center Ethanol is a Missouri Corporation with headquarters in Sauget, Illinois. At times relevant to the claims asserted in this Complaint, Center Ethanol owned and operated an ethanol manufacturing facility at 231 Monsanto Ave., Sauget, Illinois. At the Facility, Center

Ethanol produced fuel grade denatured ethanol that it stored on site. The ethanol production process and storage caused emissions of volatile VOCs. At present, Center Ethanol has suspended ethanol production operations at the Facility.

12.      Center Ethanol is a "person" within the meaning of Sections 113(b) and 302(e) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(e) and applicable federal and state regulations promulgated pursuant to the CAA.

**CLEAN AIR ACT**

13.      The CAA establishes a framework designed to protect and enhance the quality of the Nation's air so as to promote public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

**I.      National Ambient Air Quality Standards**

    **A.      General Provisions**

14.      Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires EPA to list, and issue air quality criteria for, each air pollutant, the emissions of which may endanger public health or welfare and the presence of which results from numerous or diverse mobile or stationary sources.

15.      The CAA requires the EPA Administrator to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for seven "criteria" air pollutants—including ground-level ozone—for which air quality criteria have been issued pursuant to CAA Sections 108 and 109, 42 U.S.C. §§ 7408-09.

16.      The CAA requires each state to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. CAA § 107(d), 42 U.S.C. §7407(d). An area

that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area.

17.     Pursuant to Section 108 and 109 of the CAA, 42 U.S.C. §§ 7408-09, EPA has listed and issued air quality criteria and NAAQS for ozone. The NAAQS for ozone are set forth in 40 C.F.R. Part 50.

18.     Emissions of VOC and oxides of nitrogen ("$NO_X$") are regulated under the CAA because those compounds act as precursors to the formation of ground-level ozone.

19.     At all times relevant to this Complaint, the East St. Louis region, Illinois, where Center Ethanol's Facility is located, is in marginal non-attainment with the NAAQS for ozone.

**B.     State Implementation Plans**

20.     Section 110 of the CAA, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a plan that provides for the attainment and maintenance of the NAAQS in each air quality control region within each state. This plan is known as a State Implementation Plan ("SIP").

21.     Once EPA approves a SIP, the SIP is also independently enforceable by the federal government under Section 113 of the CAA, 42 U.S.C. § 7413.

22.     Of relevance to this Complaint, Section 110(a)(2)(C) of the CAA, 42 U.S.C. § 7410(a)(2)(C), requires each SIP to include "regulation of the modification and construction of any stationary source within the areas covered by the plan as necessary to assure that national ambient air quality standards are achieved, including a permit program."

23.     40 C.F.R. § 52.23 specifies that any requirement of an approved regulatory provision of a SIP – or any limitation or condition contained within a permit issued in accordance with a SIP – is federally enforceable under CAA Section 113.

### C.   Illinois SIP Requirements

#### 1.   General

24.     On August 8, 1996, EPA approved 35 Ill. Admin. Code § 219.120 as part of Illinois' federally enforceable SIP. 61 Fed. Reg. 41,338 (Aug. 8, 1996).

25.     The Illinois SIP defines Volatile Organic Liquid ("VOL") as any substance which is liquid at storage conditions and which contains Volatile Organic Material ("VOM"). 35 Ill. Admin. Code § 211.7110. VOM is defined as any compound of carbon excluding carbon monoxide, carbon dioxide, carbonic acid, metallic carbides or carbonates, and ammonium carbonate that participates in atmospheric photochemical reactions. 35 Ill. Admin. Code § 211.7150

26.     The Illinois SIP requires that any owner or operator storing VOL in a vessel of 40,000 gallons or greater with a maximum true vapor pressure equal to 0.75 pounds per square inch absolute ("psia"), but less than 11.1 psia, shall reduce VOM emissions from storage tanks with a fixed roof through the use of an Internal Floating Roof . 35 Ill. Admin. Code § 219.120.

27.     The Illinois SIP requires that Internal Floating Roofs have two seals mounted one above the other so that each form a continuous closure that completely covers the space between the wall of the storage vessel and the edge of the Internal Floating Roof. 35 Ill. Admin. Code § 219.120(a)(1)(A)(ii).

#### 2.   Illinois SIP Construction Permit Program

28.     On May 31, 1972, EPA approved Illinois Pollution Control Board Rule 103(a) ("Permits and General Provisions") as part of the Illinois SIP. 37 Fed. Reg. 10,842, 10,862 (May 31, 1972).

29.     The Illinois SIP at 35 Ill. Admin. Code § 201.156 provides that the Illinois Environmental Protection Agency ("Illinois EPA") may impose such conditions in a construction permit as may be necessary to accomplish the purposes of, among other things, the provisions of Title 35 of the Illinois Administrative Code.

30.     The Illinois SIP provides that:

> No person shall cause or allow construction of any new emission source or any new air pollution control equipment, or cause or allow the modification of any existing emission source of air pollutions equipment, without first obtaining a construction permit from the [Illinois Environmental Protection] Agency.

35 Ill. Admin. Code § 201.142.

31.     In accordance with the Illinois SIP, on August 18, 2006, Illinois EPA issued Center Ethanol Construction Permit No. 163121ABE for certain equipment at the Facility (the "2006 Construction Permit").

### 3.     Illinois Emissions Reporting Requirements

32.     Section 182(a)(3)(B) of the CAA, 42 U.S.C. § 7511a(a)(3)(B), requires states to adopt emissions reporting requirements for owners or operators of each stationary source of $NO_x$ and VOCs, to be submitted at least every year (hereinafter, an "Annual Emissions Report" or "AER"). The Illinois emissions reporting requirements implementing this statutory provision are codified at 35 Ill. Admin. Code 254, and were approved by EPA as a revision to the Illinois SIP. 67 Fed. Reg. 34,614 (May 15, 2002).

32.     Subpart B of 35 Ill. Admin. Code 254, applies to:

> (1) Owners or operators of any source required to have an operating permit in accordance with 35 Ill. Admin. Code 201 that is permitted to emit 25 tons per year or more of any combination of regulated air pollutants, excluding greenhouse gases; (2) Owners or operators of any source required to have an operating permit in accordance with Section 39.5 of the [Illinois] Environmental Protection Act; and (3) Owners or operators of sources in ozone nonattainment areas that have a

> potential to emit 25 tons per year or more of either VOM or $NO_x$ from all emission units.

35 Ill. Admin. Code § 254.102.

33.     The required contents of an AER are delineated at 35 Ill. Admin. Code § 254.203, and include, among other things, source-wide totals of actual emissions for all regulated air pollutants emitted by the source.

34.     As set forth in 35 Ill. Admin. Code § 254.132(a), the failure to file a complete AER by the applicable deadlines shall be a violation of 35 Ill. Admin. Code 254 and 35 Ill. Admin. Code § 201.302(a).  35 Ill. Admin. Code § 254.132(a).

35.     On March 13, 2015, EPA approved 35 Ill. Admin. Code § 201.302 as part of the Illinois SIP.  80 Fed. Reg. 13,248 (Mar. 13, 2015).

36.     That provision of the Illinois SIP specifies that

> the owner or operator of any emission unit or air pollution control equipment meeting the applicability criteria contained in 35 Ill. Admin. Code 254.102 shall submit to the Agency as a minimum, annual reports detailing the nature, specific emission units and total annual quantities of all specified air contaminant emissions.

35 Ill. Admin. Code § 201.302(a).

## II.     New Source Performance Standards

### A.     General Provisions

37.     Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires EPA to publish and periodically revise a list of categories of stationary sources including those categories that, in EPA's judgment, cause or contribute significantly to air pollution that may reasonably be anticipated to endanger public health or welfare.

38.     Once a source category is included on the list, Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), requires EPA to promulgate a federal standard of performance for new sources within the category, also known as a New Source Performance Standard ("NSPS").

39.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits an owner or operator of a "new source" from operating that source in violation of an NSPS after the effective date of the NSPS applicable to such source.

40.     "Standard of performance" is defined as a standard for emissions of air pollutants that reflects the degree of emission limitation achievable through the application of the best system of emission reduction, which (taking into account the cost of achieving such reduction and any non-air quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated.  42 U.S.C. § 7411(a)(1).

41.     "New source" is defined as any stationary source, the construction or modification of which is commenced after the publication of the NSPS regulations or proposed NSPS regulations applicable to such sources.  42 U.S.C. § 7411(a)(2).

42.     "Stationary source" is defined as a building, structure, facility, or installation which emits or may emit any air pollutant.  42 U.S.C. § 7411(a)(3).

43.     "Owner or operator" is defined as any person who owns, leases, operates, controls, or supervises a stationary source.   42 U.S.C. § 7411(a)(5).

44.     The NSPS are located in Part 60 of Title 40 of the Code of Federal Regulations.

**B.      NSPS Part 60, Subpart VV**

45.     On October 18, 1983, EPA promulgated NSPS Subpart VV ("Subpart VV"). 48 Fed. Reg. 48,328, 48,335 (Oct. 18, 1983).

46.     Subpart VV applies to equipment leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry ("SOCMI").  40 C.F.R. § 60.480(a)(1).

47.     Subpart VV at 40.C.F.R. § 60.481 provides that "SOCMI" means the industry that produces, as intermediates, or final product, one or more of the chemicals listed in Section 60.489, which lists ethanol, and applies to ethanol producing facilities. 40 C.F.R. § 60.489

48.     Subpart VV, at 40 C.F.R. § 60.480(a)(2) provides that the group of all equipment within a process unit is an affected facility, and Section 60.481 defines equipment as each pump, compressor, pressure relief device, sampling connection system, open-ended valve or line, valve, and flange or other connector in VOC service.

49.     Subpart VV, at 40 C.F.R. § 60.482-1, sets forth general standards for owners and operators subject to Subpart VV and, among other things, specifies at 40 C.F.R. § 60.482-1(b) that methods of compliance determination include review of records and reports, review of performance test results, and inspection using the methods and procedures specified in 40 C.F.R. § 60.485.

50.     Subpart VV, at 40 C.F.R. § 60.482-2, sets forth standards for pumps, including the requirements at Section 60.482-2(a)(1)-(2) that each pump in light liquid service shall be monitored monthly to detect leaks by the methods specified in § 60.485(b), and shall be checked by visual inspection each calendar week for indications of liquids dripping from the pump seal.

51.     Subpart VV, at 40 C.F.R. § 60.482-4 sets forth standards for pressure relief devices, including the requirement at Section 60.482-4(a) that except during pressure releases, each pressure relief device in gas/vapor service shall be operated with no detectable emissions, as indicated by an instrument reading of less than 500 parts per million ("ppm") above background.

52.     Subpart VV, at 40 C.F.R. § 60.482-6, sets forth standards for open-ended valves or lines, including the requirement at Section 60.482-6(a)(1) that each open-ended valve or line shall be equipped with a cap, blind flange, plug, or a second valve.

53.     Subpart VV, at 40 C.F.R. § 60.482-7, sets forth standards for valves in gas/vapor and in light liquid service, including the requirement at Section 60.482-7(a)(1) that each valve be monitored monthly to detect leaks by the methods specified in Section 60.485(b) and that each valve shall comply with Sections 40 C.F.R. § 60.482-7(b)–(e).

54.     Subpart VV, at 40 C.F.R. § 60.482-7(b), provides that if an instrument reading of 10,000 ppm or greater is measured at a valve, a leak is detected.

55.     Subpart VV, at 40 C.F.R. § 60.482-8 sets forth the requirements for detecting and measuring a leak at a connector.

56.     Subpart VV, at 40 C.F.R. § 60.485(b), requires, among other things, that owners and operators determine compliance with the no detectable emission standards in Section 60.482-7(f) using Method 21. The NSPS Appendix A, at 40 C.F.R. Part 60, Method 21 §§ 8.3.1 and 8.3.1.1, sets forth the technique which must be used to determine if there is a leak from a valve. The NSPS Appendix A, at 40 C.F.R. Part 60, Method 21, §§ 8.1.1.1, 8.2, and 10.1, specify the calibration procedures for the instrument used to detect leaks, including that calibration gases shall be a mixture of methane or n-hexane and air at a concentration of about, but less than, 10,000 ppm, methane or n-hexane.

57.     Subpart VV, at 40 C.F.R. § 60.487(a) requires owners and operators to submit semiannual reports beginning six months after the initial startup date.

### C.   NSPS Part 60, Subpart Kb

58.    On April 8, 1987, EPA promulgated NSPS Subpart Kb ("Subpart Kb") to address Volatile Organic Liquid ("VOL") storage vessels (including petroleum liquid storage vessels) for which construction, reconstruction, or modification commenced after July 23, 1984.  52 Fed. Reg. 11,420, 11,429 (Apr. 8, 1987).

59.    Subpart Kb, at 40 C.F.R. § 60.110b(a), applies to each storage vessel with a capacity greater than or equal to 75 cubic meters that is used to store VOL for which construction, reconstruction, or modification is commenced after July 23, 1984.  40 C.F.R. § 60.110b(a).

60.    Subpart Kb, at 40 C.F.R. § 60.112b(a), requires the owner and operator to equip each Affected Storage Vessel, with, amongst other alternatives, an Internal Floating Roof.

61.    Subpart Kb, at 40 C.F.R. § 60.112b(a)(1)(ii)(B), requires that Internal Floating Roofs have two seals mounted one above the other so that each forms a continuous closure that completely covers the space between the wall of the storage vessel and the edge of the Internal Floating Roof.

### III.   Enforcement Provisions

62.    Under the CAA, the EPA Administrator may bring a civil action for civil penalties and appropriate relief, including a temporary or permanent injunction, when any person has violated, or is currently in violation of the CAA, or its implementing regulations.  CAA § 113(b), 42 U.S.C. § 7413(b).

63.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes civil penalties of up to $25,000 per day for each violation of the CAA.  The Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 *et seq.*, as amended by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701 *et seq.*, requires EPA to periodically adjust its civil penalties for

12

inflation.   EPA has periodically adopted and revised regulations entitled "Adjustment of Civil Monetary Penalties for Inflation," 40 C.F.R. Part 19, to upwardly adjust the maximum civil penalty under the CAA. For each violation that occurs between January 13, 2009 and November 2, 2015, penalties of up to \$37,500 per day may be assessed; and for each violation that occurs after November 2, 2015, penalties of up to \$102,638 per day per violation may be assessed under 42 U.S.C. § 7413(b).  73 Fed. Reg. 75,340 (Dec. 11, 2008); 85 Fed. Reg. 83,818 (Dec. 23, 2020).

## GENERAL ALLEGATIONS

64.     Center Ethanol is the "owner or operator" of the Facility within the meaning of the CAA and applicable Illinois regulations.

65.     At times relevant to the claims asserted in this Complaint, Center Ethanol has produced fuel grade, denatured ethanol at the Facility that was stored on site. Center Ethanol also has produced dry distiller grain and corn syrup, byproducts of the ethanol production process.

66.     The ethanol production process and storage at the Facility caused emissions of VOCs, carbon monoxide, particulate matter, nitrogen oxides, and some hazardous air pollutants.

67.     When the Facility was operating, Center Ethanol reduced VOM emissions from storage tanks with a fixed roof through the use of internal floating roofs.

68.     The Facility is a "source," a "stationary source," and a "new participating source" within the meaning of the CAA, the NSPS program and regulations, and the Illinois SIP that adopts, incorporates, and/or implements these programs and regulations.

69.     The 2006 Construction Permit for the Facility imposed particular requirements relating to certain affected units at the Facility, including a mash processing unit condensate tank

designated as Tank TK-7601 ("Tank TK-7601").  The following conditions are relevant to this Complaint:

- Part 2.5.6(a) requires that VOM emissions from the affected units, including affected mash preparation units, shall be controlled to reduce VOM emissions by at least 98.5 weight percent;

- Part 2.4.2 lists Tank TK-7601 as an affected mash preparation unit;

- Part 2.7.2 lists two ethanol day tanks, two product storage tanks, and once denaturant tank as affected tanks – including Tank TK-6101 and TK-6104 – and requires that each have an Internal Floating Roof with primary and secondary seals;

- Part 2.7.5 requires that the Internal Floating Roof of each affected tank be equipped with two seals mounted one above the other so that each form a continuous closure that completely covers the space between the wall of the storage vessel and the edge of the Internal Floating Roof.

70.    EPA conducted a Method 21 leak detection monitoring inspection at the Facility on April 25 and 26, 2017 (the "EPA Inspection"), as well as a subsequent review of records provided by Center Ethanol during the EPA Inspection.  These investigations revealed violations of Subpart VV, Subpart Kb, and provisions of Center Ethanol's 2006 Construction Permit issued pursuant to the Illinois SIP, as alleged in the EPA Violation Notice and the following Claims for Relief.

### FIRST CLAIM FOR RELIEF
(Violations of Subpart Kb and the 2006 Construction Permit: Storage Tank Seals)

71.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

72.    The Facility has multiple storage vessels that hold ethanol products and other liquids such as VOL.  Storage vessels at the Facility include Tank TK-6101 and TK-6104, which have Internal Floating Roofs to control emissions.  Air emissions from these storage vessels include VOC.

14

73.     Tank TK-6101 and TK-6104 are subject to Subpart Kb, as they have a capacity greater than 40,000 gallons and contain VOL.

74.     Because Tank TK-6101 and TK-6104 use an Internal Floating Roof to control VOC emissions in accordance with Subpart Kb, 40 C.F.R. § 60.112b(a)(1)(ii)(B) requires that Center Ethanol use an Internal Floating Roof with two seals mounted one above the other so that each forms a continuous closure that completely covers the space between the wall of the storage vessel and the edge of the Internal Floating Roof.

75.     In the Facility's 2006 Construction Permit, Condition 2.7.3(a) also requires that Tank TK-6101 and TK-6104 utilize an Internal Floating Roof meeting the requirements of 40 C.F.R. § 60.112b(a)(1)(ii)(B).

76.     Center Ethanol violated Subpart Kb and Condition 2.7.3(a) of the 2006 Construction Permit by failing to maintain seals forming a continuous closure that completely covers the space between the wall of the storage vessel and the edge of the Internal Floating Roof on Tank TK-6101 and TK-6104, as documented by forward-looking infrared ("FLIR") camera observations during the EPA Inspection showing emissions escaping from the fixed roof vents from those tanks.

77.     By violating provisions of Subpart Kb related to storage tank seals, Center Ethanol has violated Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

78.     By violating Condition 2.7.3(a) of its 2006 Construction Permit related to storage tank seals, Center Ethanol has violated the Illinois SIP.

### SECOND CLAIM FOR RELIEF
(Violation of LDAR Requirements Established by the 2006 Construction Permit
and Subpart VV)

79.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

15

80.     The 2006 Construction Permit requires that Center Ethanol comply with Subpart VV requirements as applied to the following equipment within the Facility: pumps, pressure relief devices, open-ended valves or lines, and valves that are intended to operate in VOC service.

81.     From March 2016 to July 2016, Center Ethanol violated Subpart VV and the 2006 Construction Permit by failing to perform required monthly monitoring of valves and pumps at the Facility, as shown by missing entries in the Facility's LDAR monitoring database.

82.     Center Ethanol failed to perform weekly pump checks from June 2012 through April 2016. This constitutes a violation of Subpart VV and Center Ethanol's 2006 Construction Permit.

83.     Center Ethanol violated Subpart VV and the 2006 Construction Permit by failing to perform LDAR monitoring in accordance with Method 21, as shown by significant discrepancies between the leak rates reported by Center Ethanol and the leak rates observed during the EPA Inspection.

84.     Center Ethanol violated Subpart VV and the 2006 Construction Permit by failing to perform required daily calibrations of the equipment it used for required LDAR monitoring.

85.     From at least September 2016 to April 2017, Center Ethanol violated Subpart VV and the 2006 Construction Permit by failing to use the required calibration gases when it calibrated the equipment used for LDAR monitoring.

86.     During the EPA Inspection, EPA measured VOC emissions of 2650 ppm from pressure safety device PSV-43183 when no pressure release was occurring. This violated the requirement in 40 C.F.R. § 60.482-4 that each pressure relief device in gas/vapor service shall be

operated with no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background, except during pressure releases.

87.     During the EPA Inspection, EPA located 45 open ended lines ("OELs") throughout the Facility that were not equipped with a cap, blind flange, plug, or a second valve as required by 40 C.F.R. § 60.482-6.  Since the EPA Inspection, Center Ethanol identified three additional OELs that were not equipped with a cap, blind flange, plug, or a second valve as required by 40 C.F.R. § 60.482-6.

88.     From 2012 through June 30, 2018, Center Ethanol failed to submit required semi-annual reports pursuant to Subpart VV.

89.     By violating the LDAR requirements of Subpart VV described above, Center Ethanol has violated Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

90.     By violating the LDAR requirements of its 2006 Construction Permit described above, Center Ethanol has violated the Illinois SIP.

### THIRD CLAIM FOR RELIEF
(Violation of the Construction Permit:
Control Efficiency Exceedance under the Illinois SIP)

91.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

92.     Center Ethanol's 2006 Construction Permit Condition 2.5.6(a) requires emissions from process condensate Tank TK-7601 to be controlled by a vent gas scrubber, which must operate at no less than a 98.5 percent control efficiency.

93.     Center Ethanol violated the requirement to control Tank TK-7601 emissions with a vent gas scrubber operating at no less than a 98.5 percent control efficiency because Center

Ethanol allowed uncontrolled emission from Tank TK-7601 to bypass the vent gas scrubber and vent directly to the atmosphere through an open manway and a unsealed opening.

94.     By failing to comply with the emissions control requirements for Tank TK-7601 in its 2006 Construction Permit, Center Ethanol violated the Illinois SIP.

## FOURTH CLAIM FOR RELIEF
(Violation of the Illinois Annual Emissions Reporting Program
under the Illinois SIP)

95.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

96.     In its Annual Emissions Reports to Illinois EPA, Center Ethanol under-reported the number of components at the Facility in its estimate of VOM fugitive emissions from leaking components, so the reports were incomplete and did not reflect the actual emissions from the Facility.

97.     Center Ethanol's failure to file complete Annual Emissions Reports violated the Illinois SIP.

## CLEAN AIR ACT: REQUEST FOR RELIEF

98.     For the violations asserted in the First through Fourth Claims for Relief, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Adjustment Act of 1990, Center Ethanol is subject to injunctive relief, including mitigation of the effects of excess emissions, and civil penalties of up to $37,500 per day for each violation between January 12, 2009 and November 2, 2015; and up to $102,638 per day for each violation that occurs after November 2, 2015.

## PRAYER FOR RELIEF

WHEREFORE, based upon the allegations set forth above, the United States requests that this Court:

1.      Permanently enjoin Center Ethanol from operating its Facility except in accordance with the CAA and all applicable federal regulations and applicable federally enforceable state regulations;

2.      Order Center Ethanol to operate its Facility in compliance with the CAA statutory and regulatory requirements set forth herein, the applicable SIP requirements, and the CAA permits applicable to the Facility;

3.      Order Center Ethanol to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged herein;

4.      Assess a civil penalty against Center Ethanol of up to $37,500 per day for each violation of the CAA occurring between January 13, 2009, until November 2, 2015; and $102,638 per day for each violation after November 2, 2015;

5.      Award Plaintiff its costs of this action; and

6.      Grant such other relief as the Court deems just and proper.

Signature Page for Complaint in *United States v. Center Ethanol Company, LLC* (S.D. Ill.)

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

_s/ Samantha M. Ricci_____
SAMANTHA M. RICCI
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

STEVEN D. WEINHOEFT
United States Attorney
Southern District of Illinois

NATHAN E. WYATT
Assistant United States Attorney
Southern District of Illinois

OF COUNSEL:

ANDRE DAUGAVIETIS
Associate Regional Counsel
United States Environmental Protection Agency,
Region 5
77 W. Jackson Boulevard
Chicago, IL 60604-3590

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2021, I electronically filed the Complaint with the Clerk of the Court using the CM/ECF system. And I hereby certify that on September 9, 2021, I caused copies of the foregoing Complaint to be served on the following individuals by electronic mail:

> Adam Parker
> Center Ethanol Company, LLC
> 600 Mason Ridge Center Drive
> St. Louis, MO 63141
> aparker@kdcapital20202.com
>
> John Kilo
> Defendant's Attorney
> jkilo@kiloflynn.com

> Respectfully submitted,
>
> s/ *Samantha M. Ricci*
>
> Samantha M. Ricci
> Trial Attorney
> Environmental Enforcement Section
> Environment & Natural Resources Division
> United States Department of Justice
> P.O. Box 7611
> Washington, DC 20044-7611
> (202) 514-3856
> Samantha.ricci@usdoj.gov